# United States Court of Appeals for the Federal Circuit

---

**KANNUU PTY LTD.,**
*Plaintiff-Appellant*

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**
*Defendants-Appellees*

---

2021-1638

---

Appeal from the United States District Court for the Southern District of New York in No. 1:19-cv-04297-ER, Judge Edgardo Ramos.

---

Decided: October 7, 2021

---

PERRY GOLDBERG, Progress LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by BERNARD H. CHAO, TED SICHELMAN; LEWIS EMERY HUDNELL, III, Hudnell Law Group PC, Mountain View, CA.

VICTORIA FISHMAN MAROULIS, Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, CA, argued for defendants-appellees. Also represented by KEVIN P.B. JOHNSON; DAVID COOPER, New York, NY; MARISSA RACHEL DUCCA, Washington, DC.

MATTHEW JAMES DOWD, Dowd Scheffel PLLC, Washington, DC, for amici curiae Jonathan M. Barnett, Richard A. Epstein, Jay P. Kesan, Adam Mossoff, Kristen Osenga. Also represented by ROBERT JAMES SCHEFFEL.

PHILLIP R. MALONE, Juelsgaard Intellectual Property and Innovation Clinic, Mills Legal Clinic, Stanford Law School, Stanford, CA, for amici curiae Margo A. Bagley, Jeremy W. Bock, Dan L. Burk, Michael A. Carrier, Rochelle C. Dreyfuss, Samuel F. Ernst, William T. Gallagher, Shubha Ghosh, Leah Chan Grinvald, Erik Hovenkamp, Mark A. Lemley, Orly Lobel, Brian J. Love, Stephen McJohn, Michael J. Meurer, Shawn Miller, Tyler T. Ochoa, Christopher M. Turoski.

————————————

Before NEWMAN, PROST, and CHEN, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* CHEN.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

CHEN, *Circuit Judge.*

Kannuu Pty Ltd. (Kannuu) appeals from the district court's denial of its motion for a preliminary injunction compelling Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, Samsung) to seek dismissal of Samsung's petitions for *inter partes* review at the Patent Trial and Appeal Board (Board). The district court did not abuse its discretion in denying the motion. Accordingly, we affirm.

## BACKGROUND

The relevant facts are not in dispute. In 2012, Samsung contacted Kannuu, an Australian start-up company that develops various media-related products (including Smart TVs and Blu-ray players), inquiring about Kannuu's remote control search-and-navigation technology. Kannuu

and Samsung entered into a non-disclosure agreement (NDA), *see* J.A. 211–13, to protect confidential business information while engaging in business discussions and the like.

The NDA explains that Kannuu and Samsung "desire to disclose to one another certain Confidential Information . . . to further a business relationship between the parties . . . and to protect such Confidential Information from unauthorized disclosure." J.A. 211.

The agreement also explains:

> [N]othing contained in this Agreement will be construed as granting any rights to the receiving party, by license or otherwise, to any of the Confidential Information disclosed by the disclosing party except as specified in this Agreement. Additionally, this Agreement imposes no obligation on either party to purchase, sell, license, transfer or otherwise dispose of any technology, services or products, or to engage in any other business transaction. Nothing in this Agreement shall be deemed to grant to either party a license under the other party's copyrights, patents, trade secrets, trademarks or other intellectual property rights.

J.A. 212.

Of particular relevance, paragraph 15 of the agreement contains a forum selection clause:

> If either party employs attorneys to enforce any rights arising out of or relating to this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees. This Agreement shall be construed in accordance with and all disputes hereunder shall be governed by the laws of the State of New York, without giving effect to any choice of laws principles that would require the application of the laws of a different country or state. *Any legal*

>*action, suit, or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby must be instituted exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of New York and in no other jurisdiction.* Each party further irrevocably consents to personal jurisdiction and exclusively in, and agrees to service of process issued or authorized by, any such court.

J.A. 213 (emphasis added).

Following over a year of discussions, in 2013, the parties ceased communications. No deal (i.e., intellectual property license, purchase, or similar agreement) over Kannuu's technology was made. Six years later, on May 10, 2019, Kannuu filed suit in district court against Samsung, alleging patent infringement and breach of the NDA. Samsung then filed petitions for *inter partes* review at the Board on March 27, 2020, alleging that all claims of the asserted patents are unpatentable as obvious and not novel. Kannuu responded to Samsung's petitions by arguing to the Board, *inter alia*, that review should not be instituted because Samsung violated the NDA's forum selection clause in filing for such review. The Board denied institution for three patents (on the merits of failing to show unpatentability) but instituted review for the other two asserted patents. Kannuu sought rehearing on the basis of the forum selection clause but the Board denied the request.

On October 21, 2020, Kannuu filed the preliminary injunction motion at issue in this appeal to compel Samsung to seek dismissal of the instituted *inter partes* reviews. The district court denied the motion on January 19, 2021. Kannuu timely appeals.

## DISCUSSION

This case presents a rather common series of business events: Samsung and Kannuu engaged in business discussions under the protections of a non-disclosure agreement. The discussions ended without Samsung licensing, purchasing, or otherwise adopting the property (or technology) of Kannuu. Years later, Kannuu sued Samsung in federal court for infringement of its patents (covering the technology that was the subject of the previous discussions) and for breach of the non-disclosure agreement. Samsung then turned to the Patent Office and petitioned for *inter partes* review at the Board, contending that Kannuu's patent claims should be canceled as unpatentable.

The underlying question that this case presents is one of first impression: Does the forum selection clause in the non-disclosure agreement between the entities prohibit Samsung from petitioning for *inter partes* review of Kannuu's patents at the Board?

The district court here, albeit in ruling on a motion for preliminary injunction, determined the answer to be no and declined to grant a preliminary injunction compelling Samsung to seek dismissal of its petitions of Kannuu's patents. We discern no abuse of discretion by the district court in denying such a motion on this basis.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). We review a district court's denial of a preliminary injunction under the standard of review applied by the regional circuit, here the Second Circuit. *See Myco Indus. v. BlephEx, LLC*, 955 F.3d 1, 10 (Fed. Cir. 2020). The Second Circuit "review[s] de novo the District Court's legal conclusions in deciding to grant [or deny] a motion for a preliminary

injunction, but review[s] its ultimate decision to issue the injunction for 'abuse of discretion.'" *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). The district court's denial of a preliminary injunction here "turn[s] on the interpretation of a contract, which presents 'a legal question . . . reviewed de novo.'" *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 178 (2d Cir. 2019) (quoting *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir. 2009)). We review the district court's weighing of relevant factors for abuse of discretion, which "is established 'by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings.'" *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008) (quoting *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1367 (Fed. Cir. 1996)). We review the merits of Kannuu's arguments on these factors.

## I. Success on the Merits

Determining whether the forum selection clause precludes Samsung from petitioning for *inter partes* review requires interpreting the clause in the NDA. We interpret the NDA according to New York law because "the interpretation of private contracts is ordinarily a question of state law," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930, 934 (Fed. Cir. 2019), and "[g]eneral contract interpretation is not within the exclusive jurisdiction of the Federal Circuit," *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000). New York law seeks "to give effect to the expressed intention of the parties." *In re MPM Silicones, L.L.C.*, 874 F.3d 787, 795 (2d Cir. 2017). "[A] written agreement that is complete, clear[,] and unambiguous on its face must be [construed] according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).

Though the district court held the forum selection clause was valid and enforceable, it concluded that the plain meaning of the forum selection clause in the NDA did not encompass the *inter partes* review proceedings. *See Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 1:19-cv-04297-ER, 2021 WL 195163, at \*4–5 (S.D.N.Y. Jan. 19, 2021). The court determined that the *inter partes* review proceedings "do not 'relat[e] to' the Agreement or transactions contemplated under it." *Id.* at \*5 (alteration in original).

The district court relied on dictionary definitions in construing the relevant contractual terms "relating to" and "arising out of." "Relating to," the district court explained, means "connected by reason of an established or discoverable relation," and is synonymous with "in connection with," "associated with," "with respect to[]," and "with reference to." *See Kannuu*, 2021 WL 195163, at \*4 (quoting *Merriam-Webster* and citing cases relying on other dictionaries). "Arising out of," the district court continued, is understood as narrower than "relating to," as it usually indicates a causal connection. *See id.* (citing *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001), and *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007)). Kannuu does not dispute these definitions; rather, Kannuu maintains that the district court "ignored or did not adequately consider the ways in which the validity issues are related to the parties' discussions under the NDA." Appellant's Br. at 20.

The district court did not err in its evaluation of the scope of the forum selection clause. The district court correctly concluded that the *inter partes* review proceedings "do not relate to the Agreement itself," *Kannuu*, 2021 WL 195163, at \*4, "[n]or do the [*inter partes* review] proceedings relate to transactions contemplated under the Agreement," *id.* at \*5. This is because, the district court explains, "the Agreement implicates confidentiality and not the intellectual property rights of the parties." *Id.* at \*4. Kannuu contends that the district court adopted "an unduly narrow

reading of the [forum selection clause]." Appellant's Br. at 17. We disagree. The connection between the two—the *inter partes* review proceedings and the NDA—is too tenuous for the *inter partes* review proceedings to be precluded by the forum selection clause in the NDA, which is a contract directed to maintaining the confidentiality of certain disclosed information, and not related to patent rights.

Kannuu attempts to draw two different lines of logic from the NDA to the *inter partes* review petitions. The first line is as follows: (1) the NDA involves an agreement about the exchange of confidential information in contemplation of Samsung potentially licensing Kannuu's patents; (2) Kannuu's patent infringement lawsuit relates to Samsung's alleged misuse of that confidential information and failure to license Kannuu's patents; (3) Samsung's *inter partes* review petitions relate to the patent infringement lawsuit because they contest the validity of the same patents. Kannuu's logic fails scrutiny for several reasons.

Start with point one: Kannuu tells us that "the NDA pertained to a potential license of Kannuu's patents." Appellant's Br. at 21. Perhaps a license was Kannuu's hope in signing the NDA, but the NDA itself makes clear that it does not "grant[] any rights" of this kind (license or otherwise) and the agreement "impose[d] no obligation on either party" to enter any sort of intellectual property license. *See* J.A. 212; *see also* Oral Arg. at 1:05–07 (Court: "This is not a license agreement, correct?" Counsel: "That is correct"). Accordingly, even assuming the parties understood there was a chance they would ultimately enter into a separate intellectual property license agreement down the road, the issues underlying patent infringement and invalidity fall outside the scope of the NDA. This is not to say we ignore the realities of the positions of the parties in entering into an NDA. Surely the parties entered into the NDA to exchange information in furtherance of *some sort* of business relationship. The Agreement explains as much. *See* J.A. 211 ("Company and Samsung desire to disclose to one

another certain Confidential Information . . . *to further a business relationship between the parties* . . . and to protect such Confidential Information from unauthorized disclosure." (emphasis added)). But that does not mean that future, hoped-for transactions fall within the scope of the Agreement.

The logic of points two and three—the *inter partes* reviews relate to the infringement lawsuit that, in turn, relates to the NDA—similarly fails. Kannuu states, "[T]he patent infringement claims here are covered by the [forum selection clause]," Appellant's Br. at 21, and cites in support of this proposition cases from our court such as *Texas Instruments*, 231 F.3d at 1331, and *Dodocase*, 767 F. App'x at 934–35. Kannuu's reliance on these cases ignores the fundamental difference between the nature of a patent license agreement and an NDA. Our conclusion in *Texas Instruments* was that the forum selection clause in a *license* agreement between the parties was not limited to issues like royalties and cross-licensing but also encompassed the patent infringement lawsuit between the parties because "[p]atent infringement disputes do arise from *license* agreements," 231 F.3d at 1331 (emphasis added). An adjudication of patent infringement allegations or a patent's validity are patent-centric considerations that will necessarily impact the rights under a patent license agreement. But the same is not true for an NDA: an invalidated patent or non-infringement determination does not change, disrupt, or otherwise impact the parties' NDA obligations. Likewise, a finding that a party has breached an NDA is devoid of undertaking any patent-related determinations such as infringement or validity.[1]

---

[1]    The dissent cites to statements made by Samsung during oral argument "that the patent issues in this litigation are subject to the forum selection of New York." Dissent at 3–4. But Samsung only conceded that a party to

Kannuu's reliance on *Dodocase* to demonstrate the connection between its NDA and the *inter partes* review proceedings is similarly misplaced, as *Dodocase* also involved a licensing agreement. 767 F. App'x at 932. Kannuu seeks to muddle the distinction between the two kinds of contracts in telling us that its NDA should be understood as a "failed license attempt[]." Appellant's Br. at 23. We disagree. But true or not, it is in this statement that Kannuu demonstrates it understands the key distinction between its case and *Dodocase*—a failed attempt at a license is *not* a license. We do not see, nor does Kannuu adequately explain, why *failing to bind* Samsung in a licensing agreement should be sufficient to then later *bind* Samsung from petitioning for *inter partes* review.

Kannuu also asserts that a district court case, *NuCurrent, Inc. v. Samsung Electronics Co., Ltd.*, No. 6:18-CV-51-JRG-KNM, 2018 WL 7821099 (E.D. Tex. Dec. 26, 2018), demonstrates that the NDA's forum selection clause should apply to Samsung's *inter partes* review petitions here. *NuCurrent* involved an NDA between two parties, one of

---

the NDA had to bring a patent infringement claim in New York insofar as any patent claims were brought *in conjunction with* a non-disclosure breach claim. Oral Arg. at 16:43–17:15. This is an issue of joining claims and does not imply, as the dissent suggests, that claims of infringement and invalidity would be treated differently under the forum selection clause. In fact, Samsung immediately clarified that "if the court's hypothetical were for a bare patent infringement claim in Texas that does not include NDA breach . . . [Kannuu] could potentially sue in Texas." *Id.* at 17:32–49. And yet, the dissent relies on this portion of the oral argument to incorrectly suggest that both the majority opinion and Samsung believe that validity issues are not controlled by the forum selection clause in this NDA but infringement claims are.

which was Samsung, wherein the NDA contained a forum selection clause. The district court in *NuCurrent* found, in ruling on Samsung's motion to transfer to the NDA's selected forum, that NuCurrent's trade secret misappropriation and willful patent infringement claims were within the scope of the forum selection clause in the NDA at issue. *See id.* at *7–8.

Kannuu appears to rely on *NuCurrent* in this appeal to make a judicial estoppel argument that Samsung should not be allowed to contend that an NDA's forum selection clause should be read broadly in one case (*NuCurrent*) and narrowly in another (here). *See* Appellant's Br. at 9; *see also id.* at 7–8. The Second Circuit, in applying that discretionary doctrine, "typically consider[s] whether the party's argument is 'clearly inconsistent with its earlier position,' whether the party 'succeeded in persuading a court to accept' that earlier position, and whether the 'party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *United States v. Apple, Inc.*, 791 F.3d 290, 337 (2d. Cir. 2015) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)); *id.* ("Relief is granted only when the impact on judicial integrity is certain." (cleaned up)). The transferred-to district court in *NuCurrent* was confronted with the same estoppel argument but declined to apply judicial estoppel to Samsung's later argument against extending the forum selection clause at issue to encompass *inter partes* review petitions in that case. *See NuCurrent Inc. v. Samsung Elecs. Co., Ltd.*, No. 19cv798 (DLC), 2019 WL 2776950, at *4 (S.D.N.Y. July 2, 2019) (Samsung's earlier position—that "NuCurrent's patent claims were subject to the NDA's forum selection clause because they alleged 'willful' infringement and thus were premised on the disclosure of Confidential Information protected by the NDA"—is "neither so clearly inconsistent" with its argument that the *inter partes* review petitions fell outside the scope of the NDA's forum selection

clause "nor so unfairly detrimental to [NuCurrent] as to warrant judicial estoppel."). And we agree, for the same reasons the district court gave, that no such estoppel should apply here. At the district court in *NuCurrent*, Samsung argued that the allegations of trade secret misappropriation and the *willful nature* of patent infringement were related to the NDA because they were premised on the disclosure of the confidential information covered by the NDA. *See NuCurrent*, 2018 WL 7821099, at *7. This position is not contrary to that which Samsung takes here, that is, that the NDA between itself and Kannuu is not related to patent validity disputes at the Board. Accordingly, we are unpersuaded by Kannuu's reliance on *NuCurrent*.

Kannuu then attempts to draw its second "relat[ed] to" line from the NDA to the *inter partes* review petitions. Kannuu maintains that Samsung's *inter partes* review petitions implicate provisions of the NDA because Kannuu may rebut Samsung's obviousness case with evidence of Samsung's copying, which it says derive from its allegation that Samsung breached the NDA. This second line draws the following path: (1) The NDA involves an agreement about the exchange of confidential information in contemplation of Samsung potentially licensing Kannuu's patents; (2) Samsung's *inter partes* review petitions seek to cancel these patent claims on obviousness grounds; (3) these *inter partes* reviews relate to the NDA because Kannuu can potentially present, in rebuttal to Samsung's obviousness case in the *inter partes* reviews, that Samsung copied information in violation of the NDA.

We disagree that any evidence of copying Kannuu might present in the *inter partes* review proceedings necessarily means that the *inter partes* review proceedings fall within the scope of the NDA's forum selection clause. The connection here—namely the mere possibility of some factual relevancy between the allegations of breach of the NDA and potential evidence in the *inter partes* review—is too attenuated to place the *inter partes* review petitions

within the scope of an agreement that was always about protecting confidential information and was never about patent rights.  As one circuit court has explained, in determining the scope of an arbitration clause, even if a claim "does, at least in part, arise under" or "relat[e] to" the contract, the claim should not fall within a contract's arbitration clause when it "extend[s] beyond [the] core issues" of the contract.  *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28–29 (2d. Cir. 1995) (The parties "could [not] reasonably have expected, or even contemplated, that [the arbitration] clause [in their dyeing and washing warehouse agreement] also would extend to a defamation claim based on statements about subjects other than [defendant's] services for [plaintiff]" under the contract.);  *see also KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 387 (S.D.N.Y. 2011) (explaining that in determining when a claim is within the scope of a forum selection clause, the focus of the inquiry should be on whether the "gist of those claims is a breach of [the contractual] relationship").  We think this principle applies to the NDA here and its forum selection clause.  That Kannuu *might* present some evidence about a *potential* NDA breach, which *might* be relevant to the Board's obviousness analysis, to rebut *some* of the arguments by Samsung in the *inter partes* review proceedings is not enough to place the petitions, which are fundamentally about claim patentability, within the scope of the NDA's forum selection clause, when the NDA is, at its core, about protecting confidential information.  Regardless of the evidence submitted in the *inter partes* review proceeding, the ultimate result, i.e., whether the patent claims are canceled, *vel non*, will not impact Kannuu's NDA breach claim.  Kannuu conceded as much to the district court.  *See Kannuu*, 2021 WL 195163, at *4 ("Kannuu acknowledges . . . in its opposition to Samsung's motion to stay . . . that resolution of the [*inter partes* review] proceedings will have 'no impact on the breach of contract issues to be decided by the Court.'" (quoting Kannuu)).

14      KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

We also question whether Kannuu's allegations of breach of the NDA provisions would even constitute relevant evidence of copying, *see, e.g.*, Appellees' Br. at 15 (citing cases explaining the connection required between purported evidence of copying and the challenged claims). It is Kannuu's burden to show why the confidential information covered by the NDA would be specifically relevant to any claimed invention. Given that patents are necessarily designed to publicly disclose enough information for a skilled artisan to make and use the claimed invention,, Kannuu's broad allegations of copying stemming from Samsung's purported misuse of confidential information, without more, are not enough to demonstrate a sufficient connection to the challenged patent claims. Put another way, on the facts of this case, it is at best unclear whether Kannuu has legitimate evidence of copying that will be relevant to the Board's analysis in the *inter partes* review proceedings. In view of the foregoing, the district court did not err in concluding that the *inter partes* review proceedings do not fall within the scope of the NDA's forum selection clause.

## II.  Irreparable Harm

On the second factor—whether Kannuu is likely to suffer irreparable harm in the absence of preliminary relief—Kannuu mainly parrots the arguments it made to the district court, arguing primarily that it is being deprived of its bargained-for forum. *See* Appellant's Br. at 26.  But as we just concluded, and so too did the district court, *see Kannuu*, 2021 WL 195163, at *5, because the NDA's forum selection clause does not govern the *inter partes* review proceedings, Kannuu is not being deprived of its bargained-for forum.  Kannuu then contends that that it will be irreparably harmed by the *inter partes* review proceedings because they will subject Kannuu to a greater possibility of claim cancellation, as well as additional costs and delays. *See* Appellant's Br. at 28.  But these statements are simply attacks on the inherent features of the *inter partes* review

system enacted by Congress, and on the facts presented by Kannuu, none of these rise to the level of irreparable harm necessary for a preliminary injunction.[2]  The district court accordingly did not abuse its discretion in finding this factor to weigh in Samsung's favor.

### III and IV.  Balance of Equities and Public Interest

As to the last two preliminary injunction factors—the balance of the hardships and the public interest—Kannuu repeats the arguments it already made as to why the district court erred.  *See, e.g.*, Appellant's Br. at 29 ("Kannuu is suffering hardship by being forced to litigate in an un-bargained-for forum.").  The district court found that "Kannuu has failed to show that the balance of the hardships tilts in its favor" and "the public interest favors allowing Samsung to litigate the validity of the patents at issue before the [Board]."  *Kannuu*, 2021 WL 195163, at *6.  For the reasons already stated, the district court did not abuse its discretion on these factors.

### CONCLUSION

We have considered the parties' remaining arguments and are unpersuaded.  Having discerned no error by the district court, we affirm the district court's denial of a preliminary injunction compelling Samsung to seek dismissal of its *inter partes* review petitions.

**AFFIRMED**

---

[2]    Had Kannuu and Samsung entered a contract which applied to *inter partes* review proceedings, a forum selection clause in that hypothetical contract might permit Kannuu to avoid *inter partes* review and its inherent features.  But, they did not enter such a contract.

# United States Court of Appeals
# for the Federal Circuit

_____

**KANNUU PTY LTD.,**
*Plaintiff-Appellant*

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG
ELECTRONICS AMERICA, INC.,**
*Defendants-Appellees*

_____

2021-1638

_____

Appeal from the United States District Court for the
Southern District of New York in No. 1:19-cv-04297-ER,
Judge Edgardo Ramos.

_____

NEWMAN, *Circuit Judge*, dissenting.

This appeal is from the district court's refusal to apply
the forum selection clause in the Samsung-Kannuu agree-
ment, selecting specified New York courts as the exclusive
forum for disputes relating to the agreement. The district
court held, and my colleagues agree, that the forum selec-
tion clause does not exclude the forum of the Patent Trial
and Appeal Board.[1] The panel majority holds that a forum
selection clause in a non-disclosure agreement cannot

_____

[1]   *Kannuu Pty, Ltd. v. Samsung Electronics Co., Ltd.*,
19 Civ. 4297 (ER), 2021 WL 195163 (S.D.N.Y. Jan. 19,
2021) ("Dist. Ct. Op.").

2        KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

control the forum for related patent issues unless the agreement is also a patent license. I respectfully dissent, for the forum selection clause is clear and unambiguous, and law and precedent require that it be respected and enforced.

## DISCUSSION

The complaint charging Samsung Electronics Co. with patent infringement and breach of contract was filed by Kannuu Pty Ltd. in the United States District Court for the Southern District of New York, the forum required by a Non-Disclosure Agreement between Kannuu and Samsung ("the Agreement"). The stated purpose of the Agreement is to facilitate discussion of Kannuu's technology "to further a business relationship between the parties." Agreement preamble, Appx443. The business relationship was to consider the possible licensing to Samsung of Kannuu's technology and patents. However, no license ensued, and eventually Kannuu filed this suit in the Southern District of New York.

Samsung's answer to the complaint stated the defenses of non-infringement, non-breach of contract, and patent invalidity. Samsung then filed petitions in the Patent Trial and Appeal Board (PTAB), asserting invalidity of the five patents for which infringement was charged. The PTAB instituted inter partes review of two of the five patents. Kannuu then moved the district court to enjoin the PTAB proceeding in view of the forum selection clause in the Agreement, as follows:

> [¶] 15. Any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby must be instituted exclusively in a court of competent jurisdiction, federal or state, located within the Borough of Manhattan, City of New York, State of New York and in no other jurisdiction.

Agreement ¶ 15, Appx445.

The district court denied the motion, and stayed all district court proceedings "pending resolution of the IPR proceedings regarding the '354 and '393 patents." Dist. Ct. Op. at *11. Kannuu appeals, arguing that the forum selection clause bars the PTAB proceeding, and that precedent and the law of contracts require that the agreed forum should be respected.

My colleagues hold that the forum selection clause does not apply because the Agreement is a "non-disclosure agreement," not a "license agreement," and in the absence of a license the selected forum does not apply because the relation of patent validity to this litigation is "too tenuous . . . to be precluded by the forum selection clause . . ." Maj. Op. at 8.

I cannot agree. The Agreement does not require that there is a patent license in order for the forum selection clause to apply. The clause applies to "any legal action, suit or proceeding arising out of or related to this Agreement or the transactions contemplated hereby." Agreement ¶ 15. It is not disputed that the infringement suit is subject to the forum selection clause, and that the patents that Samsung presented to the PTAB are the patents that Samsung is accused of infringing. It is not disputed that the patents relate to the subject matter communicated under the Agreement. It is not disputed that Kannuu's suit against Samsung "aris[es] out of or relat[es] to . . . the transactions contemplated hereby," the words of ¶ 15.

Samsung appears to agree that the patent issues in this litigation are subject to the forum selection of New York. At the argument of this appeal, Samsung stated that "the patent claim . . . has to be brought in New York:"

> Judge: Let's say that Kannuu sues Samsung for patent infringement in Texas, which Kannuu presumably can do, since they're a Texas company.

4          KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

> Would Samsung say "No, you're barred by this agreement, you must sue us in New York," which is what Kannuu apparently thought they had to do?
>
> Samsung counsel: Your Honor, this depends on what the allegations look like specifically, for example, in this case, the patent claim is paired with a non-disclosure breach claim, so it has to be brought in New York because there is an NDA non-disclosure violation alleged.
>
> Judge: The charge was— the charge was infringement, was there no charge of infringement?
>
> Samsung counsel: There also is a charge of infringement, so there are both the patent infringement and NDA claims in New York. If the court's hypothetical were for a bare patent infringement claim in Texas that did not include NDA breach and does not include allegations of willful infringement, for example, they could potentially sue in Texas. So you need to look at both the claims that are asserted and what the evidence specifically permits.

Oral arg. recording at 16:43–17:54.

Accepting Samsung's position that the infringement claim is required to be brought in New York, Samsung's infringement defense of patent invalidity would necessarily be included, or it would be deemed waived. My colleagues' position that patent invalidity is excluded from the scope of the forum selection clause, is not presented by Samsung. My colleagues' ruling that "a finding that a party has breached an NDA is devoid of undertaking any patent-related determinations such as infringement or validity," Maj. Op. at 9, does not comport with Samsung's position that the infringement claim must be brought in New York. And if the infringement claim indeed must be

brought in New York, then infringement defenses must also be brought in New York.

My colleagues hold that the patent claim is not subject to the forum selection clause because the Agreement is not a patent license. Neither party proposed this theory, and the district court stated, without dispute, that "the parties entered the Agreement so that Samsung could evaluate Kannuu's technology" for licensing purposes. Dist. Ct. Op. at *4. My colleagues err in holding that the forum selection clause does not apply to Samsung's claims of patent invalidity.

Precedent on forum selection explains its status as a doctrine of common law origin, and assures the right of contracting parties to choose the forum that will resolve any disputes related to the contract. Forum selection is a widespread contract practice, and conformity to the selected forum is generally uncontroversial. Precedent has dealt with special situations. For example, the Supreme Court dealt with an admiralty issue in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and on review of the common law history of forum selection, the Court held that "in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." *Id.* at 15. The Court held that when "the language of the clause is clearly mandatory and all-encompassing" it should be enforced. *Id.* at 20.

The Court stated in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 59–60 (2013), that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Precedent in the Second Circuit further illustrates the general acceptance of forum selection by contracting

6          KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

parties. The Second Circuit, which encompasses the New York forum selected in the Agreement, summarized the factual inquiries relevant to determining the applicability of a forum selection clause. In *Phillips v. Audio Active Ltd.* the court set forth four general inquiries:

> (1) Resolve "whether the clause was reasonably communicated to the party resisting enforcement"
>
> (2) "[C]lassify the clause as mandatory or permissive"
>
> (3) Resolve "whether the claims and parties involved in the suit are subject to the forum selection clause" and
>
> (4) "[A]scertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust.'"

494 F.3d 378, 383–84 (2d. Cir. 2007) (citations omitted).

The Second Circuit explained that the subject matter in suit must be related to the agreement containing the forum selection clause. In *Coregis Insurance Co. v. American Health Foundation, Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001), the court explained that "relating to" is a "broad term" that includes "in connection with" and "associated with."

Application of these principles is illustrated in several rulings of the Southern District of New York. For example, in *International Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 475 F. Supp. 2d 450 (S.D.N.Y. 2007), the court considered a clause selecting the New York forum for disputes relating to an agreement concerning investments; the court held that since a fiduciary relationship was contemplated for the transactions subject to the agreement, claims for breach of fiduciary duty were subject to the forum selection clause. *Id.* at 454.

In a copyright case in the Southern District, the court held that a copyright dispute was subject to a forum selection clause in a contract for database management, because the operative facts of the dispute required "reference to rights and duties defined" in the contract. *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 CIV. 10550 (SHS), 2000 WL 1277597, at \*6 (S.D.N.Y. Sept. 7, 2000). The court explained that a forum selection clause "will also encompass tort claims if the tort claims . . . 'involv[e] the same operative facts as a parallel claim for breach of contract.'" *Id.* (citation omitted).

The relation of the subject matter in dispute to the contract containing the forum selection clause was again considered in *Redhawk Holdings Corp. v. Craig Investments, LLC*, No. 15 CIV. 9127 (CM), 2016 WL 3636247 at \*8 (S.D.N.Y. June 24, 2016). The district court held that the selected forum in a representation contract applied to a securities fraud claim arising from the representation. The court stated that forum selection clauses are construed to implement their purpose, and that "Courts do not presume that parties intended to exclude statutory claims from a forum selection clause." *Id.*

A forum selection clause in words identical to that in the Kannuu-Samsung Agreement was successfully invoked by Samsung to remove an infringement complaint from Texas to New York. *NuCurrent, Inc. v. Samsung Electronics Co.*, 2018 WL 7821099, at \*7 (E.D. Tex. Dec. 26, 2018). The Texas district court stated that the arguments by NuCurrent concerning why Texas was a more convenient forum than New York did not overcome the contractual agreement that any suit would be filed "exclusively" in the New York forum. *Id.* at \*7–8.

After the transfer from Texas to New York, NuCurrent asked the New York district court to enjoin Samsung's PTAB proceedings on the NuCurrent patents. However, Samsung successfully argued that the agreement between

8        KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

the parties had expired, along with its forum selection clause, and thus that the PTAB proceedings could continue. *NuCurrent Inc. v. Samsung Electronics Co., Ltd.*, No. 19CV798 (DLC), 2019 WL 2776950 at *2 (S.D.N.Y. July 2, 2019) (the "forum selection clause is not specifically identified as one of the provisions that survives expiration or termination of the" agreement).

Federal Circuit precedent has consistently enforced forum selection clauses on principles of contract law. In *Monsanto Co. v. McFarling*, 302 F.3d 1291 (Fed. Cir. 2002), the plaintiff had filed suit for patent infringement and breach of contract, and the defense included assertions of patent invalidity. The contract was for the licensed use of patented soybean seeds, and selected Missouri as the forum for all disputes. This court held that the Missouri selected forum applied to the patent count, stating that "Such a clause is enforceable unless the party challenging it clearly demonstrates that it is invalid or that enforcement would be unreasonable and unjust." *Id.* at 1294–95. The court cited *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14 (1985) for the observation that the enforcement of forum selection "'does not offend due process' when the provisions are neither unreasonable nor unjust." *Id.* (citation omitted).

In *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325 (Fed. Cir. 2000), the court held that the selection of California in a patent license agreement barred Tessera from participating in a proceeding on the same issues in the International Trade Commission. *Id.* at 1332. The court stated: "when [the parties] negotiated the terms of their licensing agreement, this court attributes to them adequate knowledge of the basic patent law actions and remedies available to litigants, including the available forums and venues." *Id.* at 1330.

In *General Protecht Group, Inc. v. Leviton Manufacturing Co.*, 651 F.3d 1355, 1358 (Fed. Cir. 2011) this court

enforced a forum selection clause in a settlement agreement that stated: "any dispute between the Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico." (brackets in original). The complainant had argued that merely raising the possible defense of an implied license should not trigger a forum selection clause that would prohibit proceedings before the International Trade Commission. *Id.* at 1359. We explained that "such a forum selection clause would be meaningless" if it was necessary first to decide the merits of the license claim in a different forum in order to know whether the claim "related to" the settlement agreement and was subject to the selected forum. *Id.* We also held that a party would be irreparably harmed, as a matter of law, if it were "deprived of its bargained-for forum." *Id.* at 1365.

The Federal Circuit has directly considered the role of forum selection when patent validity is challenged in the PTAB instead of the selected forum. In *Dodocase VR, Inc. v. MerchSource, LLC*, 767 F. App'x 930 (Fed. Cir. 2019) the court held that the PTAB proceeding was barred by the contract provision that: "The laws of the State of California shall govern any dispute arising out of or under this Agreement." *Id.* at 932. The court stated that "the language of the forum selection clause" encompassed PTAB proceedings. *Id.* at 935. The court stated that there would be irreparable harm in allowing validity to be determined in the PTAB forum, citing the hardship of defending validity in a second forum and the attendant financial and business burdens. *Id.*

PTAB actions were at issue in *Nomadix, Inc. v. Guest-Tek Interactive Entertainment Ltd.*, No. 219CV04980ABFFMX, 2020 WL 1032395 (C.D. Cal. Jan. 23, 2020), where the district court held that the petitions filed in the PTAB were barred by the forum selection in the license. The district court issued a permanent injunction

10    KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

against proceeding in the PTAB. *Id.* at *3–*4. This decision was affirmed by the Ninth Circuit, explaining that "Guest-Tek voluntarily bargained away its right to" have the USPTO adjudicate patent validity by agreeing to a forum selection clause that included no carveouts for other fora like the USPTO where certain disputes relating to the license agreement could be adjudicated. *Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. 20-55439, 2021 WL 4027807, at *2 (9th Cir. Sept. 3, 2021).

The Ninth Circuit focused on the words "in connection with" in the forum selection clause, and explained that patent validity had a "logical or causal connection" to the agreement. *Id.* The court observed that any PTAB decision on patent validity would affect liability under the agreement, confirming that the PTAB patent validity actions were subject to the agreed forum. *Id.* at *1 ("whether the PTAB would have to analyze or interpret the License Agreement says nothing about whether the PTAB proceedings arise in connection with the License Agreement. The relevant question is whether the validity of the patents has a logical or causal connection to the License Agreement. As we have already found, they do, because the validity of the patents affects Guest-Tek's obligation to pay royalties under the License Agreement.") (citations omitted).

On this extensive precedent, the panel majority errs in holding that any question of validity of Kannuu's patents is unrelated to the issues of infringement and breach of contract as agreed to be related to the Agreement between Samsung and Kannuu. The Agreement's forum selection clause, by its terms, applies to "any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated [t]hereby." Agreement ¶ 15. My colleagues' ruling that the forum selection clause nonetheless does not apply to the issues of validity of the patents on technology disclosed under the Agreement is incorrect, for it is undisputed that the "transactions contemplated" by the Agreement are licensing of the Kannuu

technology and patents. The panel majority errs in law and precedent, in removing patent validity from the district court in which infringement and breach of contract will be tried.

Contracts are interpreted to implement the mutual understanding and intent of the contracting parties. *See In re MPM Silicones, L.L.C.*, 874 F.3d 787, 795 (2d Cir. 2017) ("a fundamental objective of contract interpretation is to give effect to the expressed intention of the parties."). Here there is no disagreement about the intent of the parties, and no ambiguity in the words of the forum selection provision of ¶ 15. It cannot reasonably be argued that Kannuu and Samsung intended and agreed to carve-out the PTAB for determination of patent validity.

The majority acknowledges that "New York law seeks 'to give effect to the expressed intention of the parties.'" Maj. Op. at 6. Nonetheless, the majority holds that the forum selection clause does not bar the concurrent action in the PTAB. That holding is devoid of any support, even by the majority.[2] The Court in *M/S Bremen* observed that the

---

[2] The majority opinion misstates my dissent. My view is that the agreed forum selection clause, which states that "'any proceeding" for "the transactions contemplated hereby" "must be instituted exclusively" in the selected New York forum. Patent validity is fundamental to the "contemplated transactions," as pleaded by Samsung in the agreed New York forum. My concern throughout the dissent is the majority's incorrect interpretation of "any legal action, suit, or proceeding" that is "arising out of or relating to" the Agreement, as excluding validity determinations in the Patent Trial and Appeal Board. It is not a reasonable contract interpretation, in the majority's holding that other forums must be mentioned by name and explicitly excluded—despite the contract words "must be instituted exclusively." This is the inverse of the rule of interpretation

12      KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.

burden of establishing the inapplicability of a forum selection clause is on the party challenging the selection.   407 U.S. at 15.

The Agreement's ¶ 15 explicitly states the intended application of the forum selection provision to any "transactions contemplated" by the Agreement.   Nonetheless, my colleagues hold that since the Agreement concerns non-disclosure, patent aspects are excluded from the forum selection clause, no matter how close the relation of the patents to the activities conducted under the Agreement.   The majority's ruling ignores the Agreement's explicit application of the forum selection to "[a]ny legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby."   Agreement ¶ 15, Appx445.

The majority errs in holding that this contracted forum selection does not apply.   There is no reason to deny this contract right.   It is apparent that the provisions of ¶ 15

---

that *expressio unius est exclusio alterius*, that to include one item (the New York forum) necessarily excludes all others.   *See, e.g.*, *Eden Music Corp. v. Times Square Music Publications Co.*, 127 A.D.2d 161, 164, 514 N.Y.S.2d 3, 5 (1987) (applying "The principle of *expressio unius est exclusio alterius*, i.e., 'the expression in the contract of one or more things of a class implies exclusion of all not expressed' . . .").

Samsung's argument, which I quoted for completeness, is not the majority's argument.   The majority's argument is simply that since the Agreement does not mention the Patent Trial and Appeal Board as excluded by the "exclusive" forum selection clause, then it is not excluded despite the contract's provision that applies to "any proceeding" "arising out of or relating to this Agreement"—despite the concession, even by Samsung, that the issues of infringement and validity "arise out of or are related to" the Agreement.

KANNUU PTY LTD. v. SAMSUNG ELECTRONICS CO., LTD.          13

should be enforced.  From the court's contrary ruling, I respectfully dissent.